UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ROBERT W. PEAK and CINDY J. HURRELBRINK PEAK, and LAWRENCE DAVIS, Individually and On Behalf of All Others Similarly Situated, <br><br> *Plaintiff,* <br><br> v. <br><br> ZION OIL & GAS, INC., VICTOR G. CARRILLO, and MICHAEL B. CROSWELL, JR., <br><br> *Defendants.* | Civil Action No. 3:18-CV-02067-X |

## MEMORANDUM OPINION AND ORDER

Lead plaintiffs Robert W. Peak, Cindy J. Hurrelbrink Peak, and Lawrence Davis in this putative class action allege that Zion Oil & Gas, Inc. (Zion), Victor Carrillo, and Michael Croswell[1] made false statements and omissions to investors about its exploration activities in Israel, its financial statements, and a Securities and Exchange Commission (Commission) investigation. The lead plaintiffs have pending claims under both the Securities Act of 1933, 15 U.S.C. § 77a, *et seq.* (Securities Act), and the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.* (Exchange Act). Zion filed a motion to dismiss [Doc. No. 32], and the accompanying appendix is the subject

---

[1] For ease, this order refers to the defendants collectively as "Zion," and it refers to Carrillo and Croswell collectively as the individual defendants.

1

of the lead plaintiffs' motion to strike [Doc. No. 39]. The lead plaintiffs also filed a notice requesting oral argument, objecting to arguments in Zion's reply that they believe to be new and stating what they would state at a hearing [Doc. No. 44]. Zion filed a response stating what it would state at a hearing [Doc. No. 45]. True to form, the lead plaintiffs got the last word in their reply [Doc. No. 46].

For the reasons explained below, the Court **GRANTS IN PART** the defendants' motion to dismiss and **DISMISSES WITHOUT PREJUDICE** the Securities Act claims for lack of standing. And the Court **DISMISSES WITHOUT PREJUDICE** the lead plaintiffs' Exchange Act claims for failure to comply with the pertinent pleading standards. The lead plaintiffs must refile their complaint within 28 days of the issuance of this order.

Additionally, the Court **DENIES** the motion to strike any material this order references. To the extent such materials are not referenced in this order, the Court **DENIES WITHOUT PREJUDICE** the motion to strike so the lead plaintiffs may re-urge their arguments at the appropriate time. Finally, the Court construes the request for oral argument as a motion for leave to file a sur-reply and **GRANTS** it. The Court considered that round of briefing when drafting this opinion and order.[2]

---

[2] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

I. Factual Background

Zion is a Delaware Corporation with its principal place of business in Dallas. John M. Brown formed the company in 2000 with a vision of helping Israel become energy independent. Zion went public in 2007. The pleadings allege that Zion raised over $181 million from investors through a direct stock purchase plan that bypassed investment banks and stockbrokers. During the class period (February 13, 2019 through November 20, 2019), Zion had one petroleum exploration license in Israel—to drill the Megiddo-Jezreel #1 well.

The lead plaintiffs allege that Zion made representations that its oil exploration activities were based on "modern science and good business practice,"[3] but that it instead uses 2D seismic technology instead of industry-standard 3D seismic technology. The lead plaintiffs cite to a June 27, 2018 *Financial Times* article calling into question how Zion could have lower investor relations costs in 2015–17 but substantially increased investor capital between 2016–17. They also cite a subsequent *Financial Times* article that concluded that the Zion's disclosed $139,000 median employee salary figure was erroneously low. The lead plaintiffs further allege that, according to a whistleblower complaint to the Commission, Zion paid a Christian minister to promote the company's stock. The lead plaintiffs further criticize statements in Zion press releases about the Megiddo-Jezreel #1 that said that the well was a geological success.

---

[3] Lead Plaintiffs' *Amended Class Action Complaint* (Amended Complaint) ¶ 37 [Doc. No. 27].

Finally, the lead plaintiffs claim Zion misled investors regarding a Commission investigation. A tweet from an anonymous account indicated that the Commission withheld documents in response to a public information request into whether the Commission was investigating Zion. Zion responded by stating there was no Commission investigation but that there were "merely indicators of a routine FINRA questionnaire that's standard after a steep rise of our stock recently."[4] A subsequent press release also contained a response from Carrillo that "there are false rumor [sic] being spread about Zion. We are aware of these untruths and we deny and rebuke them (Isaiah 54:17)."[5] Subsequently, Zion similarly denied the existence of any pending or threatened proceeding that expected to have a material adverse effect on its financial position in its first quarter Form 10-Q filing with the Commission. Within that month, the investment journal *Probes Reporter* confirmed that Zion was the subject of an ongoing Commission enforcement proceeding after filing a public information appeal. Zion reiterated its position in a tweet that there was no Commission investigation.

The Commission subpoenaed Zion on June 21, 2018, and Zion disclosed that fact to investors on July 11. Its stock fell 11% by the end of the next day. In August, the same anonymous Twitter account posted a link to the Commission whistleblower tip. Several top staff changes followed, including the resignation of the chairman of the governance committee, the CEO, and the auditing firm. In November 2018, Zion

---

[4] *Id.* ¶ 51.
[5] *Id.* ¶ 89.

disclosed that the Megiddo-Jezreel #1 well was not viable, and Zion's stock fell 57% the next day.

## II. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[6] To survive a motion to dismiss, the lead plaintiffs must allege enough facts "to state a claim to relief that is plausible on its face."[7] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[9] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[10]

But this is no normal complaint, and thus no normal motion to dismiss. This is a fraud case, specifically regarding federal securities. For fraud, Federal Rule of Civil Procedure 9(b) requires the plaintiff to "state with particularity the

---

[6] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Id. See also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

[10] *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

5

circumstances constituting fraud or mistake."[11] "In other words, Rule 9(b) requires "'the who, what, when, where, and how' to be laid out' in the complaint."[12] "To plead an omission with sufficient particularity, plaintiff must specifically plead when a given disclosure should have been made."[13]

However, puffery or generalized statements are not actionable. "[G]eneralized, positive statements about the company's competitive strengths, experienced management, and future performance are not actionable because they are immaterial."[14] Likewise, statements of opinion are not actionable because they are not verifiable.[15]

Also, the Public Securities Litigation Reform Act requires the lead plaintiffs to specify "the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent."[16] Pleading misstatements therefore requires the plaintiffs to: (1) specify each allegedly misleading statement; (2) identify the speaker; (3) state when and where the statement was made; (4) plead with particularity the contents of the false representations; (5) plead with particularity what the person making the

---

[11] FED. R. CIV. P. 9(b).

[12] *Pipefitters Local No. 636 Defined Benefit Plan v. Zale Corp.*, 499 F. App'x 345, 349 (5th Cir. 2012) (*citing Benchmark Elecs. Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)).

[13] *Masel v. Villarreal*, 924 F.3d 734, 749 (5th Cir. 2019) (citing *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006)).

[14] *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 869 (5th Cir. 2003).

[15] *See, e.g., Omnicare v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183 (2015) (discussing the difference between facts and opinions).

[16] *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Nathenson v. Zonagen*, 267 F.3d 400, 412 (5th Cir. 2001)).

misrepresentation obtained thereby; and (6) explain why the statements were fraudulent.[17]

### III. Exchange Act Claims

#### A. False or Misleading When Made

Zion first attacks the complaint as failing to meet the Public Securities Litigation Reform Act's requirement of alleging the statements were false or misleading when made.

The Court agrees with Zion that the lead plaintiffs have failed to plead that the statements or omissions were false or misleading when made. For example, the amended complaint alleges that Zion stated it encountered hydrocarbons in the drilling mud in the Megiddo-Jezreel #1 well. But there is no indication in the complaint that such statements were false when made. On the contrary, Zion disclosed in Commission filings that "[w]e do not have any proved reserves or current production of oil or gas. We cannot assure you that any wells will be completed or produce oil or gas in commercially profitable quantities."[18] As pled, the amended complaint does not allege that Zion knew such statements were false when made.

---

[17] *ABC Arbitrage Plaintiffs' Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002).

[18] Defendants' *Appendix in Support of Motion to Dismiss* (Appendix), at 383 [Doc. No. 34-1]. Such filings are contained in Zion's Appendix. The Court's consideration of this Commission filing requires the Court to rule on the Plaintiffs' *Motion to Strike the Appendix* [Doc. No. 40]. Normally, courts limit their inquiry in a motion to dismiss to the facts alleged in the complaint and its exhibits. But the Fifth Circuit has made clear that:

> When deciding a motion to dismiss a claim for securities fraud on the pleadings, a court may consider the contents of relevant public disclosure documents which (1) are required to be filed with the SEC, and (2) are actually filed with the SEC. Such documents should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents.

Likewise, the amended complaint complains of Zion capitalizing operating expenses. It is difficult to see how Zion could have known such statements were false when Commission rules prescribe such procedures for entities that follow the full cost method,[19] and Zion disclosed in Commission filings that it "follow[s] the full-cost method of accounting for oil and gas properties" and "all costs associated with acquisition, exploration and development of oil and gas reserves, including directly related overhead costs, are capitalized."[20]

Similarly, the amended complaint alleges Zion should have disclosed it was "exposed to increased regulatory risk and/or was already subject to an ongoing SEC investigation."[21] But more is needed. It is a high hurdle indeed to plead that an entity subject to an investigation that had not resulted in a subpoena had a duty to state it was or might be under investigation.

The Court will defer to a second amended complaint and subsequent motion to dismiss to determine what statements constitute nonactionable opinion or puffery. The Court will give the lead plaintiffs a final opportunity to make their best substantiated allegations and consider them holistically before the Court dismisses anything with prejudice.

---

*Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996). Such is the case here. The Court **DENIES** the motion to strike any material this opinion references. To the extent such materials are not referenced in this opinion, the Court **DENIES WITHOUT PREJUDICE** the motion to strike.

[19] *See* 17 CFR § 210.4-10(c) (prescribing how to capitalize costs for a "reporting entity that follows the full cost method").

[20] Appendix, at 395.

[21] *See, e.g.,* Amended Complaint ¶¶ 87, 90, 100.

B. Specificity

Zion also raises the argument that some of the lead plaintiffs' pleadings lack specificity. For example, the amended complaint alleges lavish executive compensation and excessive marketing expenses. But the complaint fails to specify what statements Zion made and how its compensation and marketing caused those statements to be false. Likewise, the lead plaintiffs claim that Zion misrepresented its financial condition in its 2017 10-K because Zion has reported the same estimated costs for drilling and exploration activities for multiple years. But the amended complaint lacks any substantiation of "industrywide price fluctuations and other market conditions"[22] it says could have caused such statements to be false. Finally, the amended complaint seeks to establish liability by the defendants for a sermon of Dr. David Jeremiah. But the lead plaintiffs have yet to sue Dr. Jeremiah for any failure to disclose that he owned stock in Zion.[23] Nor does the complaint allege that Zion controlled Dr. Jeremiah and his sermons—the farthest standard in this area of the law a court has appeared to reach.[24]

---

[22] Amended Complaint ¶ 85.

[23] *Cf. In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1273 (11th Cir. 2016) (any duty to disclose such promotions rests with the promoter because "[t]here is no statutory duty to disclose imposed on the issuer").

[24] *See Rabkin v. Lion Biotechnologies, Inc.*, 2018 WL 905862, at *7 (N.D. Cal. Feb. 15, 2018) (finding that the defendants were makers of promotional statements because they "had ultimate authority over the articles' content and communication" and "contributed substantially to the editing process").

The lead plaintiffs must replead to indicate which specific statements they are challenging as fraudulent (and the requisite who, what, when, where, and how of the alleged fraud).[25]

## C. Scienter

The motion to dismiss also contends that the amended complaint fails to plead a cogent and compelling inference of scienter. Specifically, the defendants argue the complaint lacks sufficient allegations to make a case "at least as compelling" as any opposing inference because it contains group pleadings allegations.

To adequately plead scienter, the lead plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."[26] That requires that the inference be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged."[27] The "court must consider plausible inferences supporting as well as opposing a strong inference of scienter. Ultimately, in order to create an inference of scienter, the allegations in the complaint must be 'cogent and compelling,' not simply 'reasonable,' or 'permissible.'"[28] And the Fifth Circuit has "rejected the group pleading approach to scienter and

---

[25] *See generally ABC Arbitrage Pls. Grp.*, 291 F.3d 336 at 350.

[26] 15 U.S.C. § 78u-4(b)(2)(A).

[27] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

[28] *Local 371 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 956–57 (5th Cir. 2016) (internal citations omitted).

instead look[s] to the state of mind of the individual corporate official or officials 'who make or issue the statement[.]'"[29]

Falsity and scienter are first cousins in a case such as this. The lead plaintiffs' allegations must make a showing both that the statements were false when made (falsity) and that the defendants knew of the falsity or had severe recklessness (scienter). Because the Court has required a repleading as to falsity, any determination as to scienter at this specific time would be premature. But the issues the Court identified about falsity are also issues the lead plaintiffs must plead adequately in their amended complaint to avoid dismissal with prejudice.[30] And the lead plaintiffs should be mindful that any amended complaint must avoid group pleading.[31]

IV. Securities Act Claims

As to the lead plaintiffs' Securities Act claims, Zion argues that the lead plaintiffs lack standing because they cannot trace their shares to the specific

---

[29] *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 208 (5th Cir. 2009) (quoting *Indiana Elec. Workers' Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 533 (5th Cir. 2008)).

[30] The amended complaint also relies on such matters as the individual defendants' positions with a company or resignations as evidence of scienter. But these notions are ones the Fifth Circuit has rejected. *See Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 433 (5th Cir. 2002) ("A pleading of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions within the company.") (internal citation committed). *See, e.g., Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 383 (5th Cir. 2004) ("The subsequent resignations of [the defendant's] executives is similarly unavailing as proof of the commission of fraud by these or other individuals.").

[31] Zion also seeks to dismiss the Exchange Act claims because the lead plaintiffs fail to plead loss causation and that the Section 20(a) claims for control person liability are derivative of the Section 10(b) claims above and must be dismissed. As the Court is requiring the lead plaintiffs to replead, the Court believes it premature to address these dispositive arguments.

registration statement at issue. The lead plaintiffs respond that class member Lawrence Davis has shares traceable to the April 2018 and August 2018 offerings.

Securities Act claims must clear an additional standing hurdle not present in Exchange Act claims. Securities Act standing to sue is confined to investors who purchased directly in an offering or aftermarket purchasers who can "trace" their shares "for which damages are claimed to the specific registration statement at issue."[32] The class action wrinkle for Securities Act standing is that named plaintiffs who lack such standing cannot magically grant it to themselves by conjuring up a class member who can trace their shares.[33]

Here, the Court previously appointed Dennis Robertson and Melody Guy as lead plaintiffs after their only competition withdrew. The fact that Lawrence Davis might have standing is not equivalent to the lead plaintiffs having standing.[34] This raises the specter about whether the proper lead plaintiffs came forward and were chosen. The Public Securities Litigation Reform Act requires the original plaintiff to widely circulate within 20 days of the filing of the complaint a notification of the class claims, and it allows any purported class member to move to serve as lead plaintiff within 60 days.[35] One individual other than Robertson and Guy petitioned to be lead

---

[32] *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 495–96 (5th Cir. 2005) (internal citations omitted).

[33] *See Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d 151, 160 (N.D. Tex. 2007) (Godbey, J.) ("While the Class may well include unnamed class members who have standing to pursue claims under sections 11 and 12(a)(2), none of those putative class members is a named plaintiff. Plaintiffs therefore lack standing to assert a section 11 and 12(a)(2) claim[.]").

[34] *Id.* (dismissing Securities Act claims when unnamed class members might have standing but the named plaintiffs did not).

[35] 15 U.S.C. § 78u-4(a)(3).

plaintiff some 16 months ago, but he later withdrew. Thus, the Court chose the only individuals who sought the designation. And the lead plaintiffs do not seek to disturb that settled ruling they themselves asked for. Accordingly, the Court **GRANTS** Zion's motion as to the Securities Act claims and **DISMISSES** the lead plaintiffs' Securities Act claims due to lack of standing.[36]

## V. Conclusion

For these reasons, the Court **GRANTS IN PART** the defendants' motion to dismiss. The Court **DISMISSES WITHOUT PREJUDICE** the lead plaintiffs' Securities Act claims due to lack of standing. And the Court **DISMISSES WITHOUT PREJUDICE** the lead plaintiffs' Exchange Act claims for failure to comply with the pertinent pleading standards. The lead plaintiffs must refile their complaint within 28 days of the issuance of this order. Additionally, the Court **DENIES** the motion to strike any material this order references. To the extent such materials are not referenced in this order, the Court **DENIES WITHOUT PREJUDICE** the motion to strike. Finally, the Court construes the request for oral argument as a motion for leave to file a sur-reply and **GRANTS** it.

**IT IS SO ORDERED** this 3rd day of March.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[36] As a result of this ruling on a dispositive issue, the Court need not reach Zion's remaining arguments as to the Securities Act claims.

13